MATTHEW SKINNER ET AL. *v.* PETER J. DOELGER ET AL. (AC 25644)

MATTHEW SKINNER ET AL. *v.* MICHAEL MOROSKY (AC 26764)

DiPentima, Harper and Rogers, Js.

Argued September 15, 2006—officially released February 13, 2007

*William M. Bloss*, with whom, on the brief, were *Joel H. Lichtenstein* and *Cynthia C. Bott*, for the appellants (plaintiffs).

*Lorinda S. Coon*, with whom, on the brief, was *David A. Haught*, for the appellee (defendant Michael Morosky).

*Opinion*

HARPER, J. In these consolidated appeals, the plaintiffs, Matthew Skinner[1] and his parents, Karen Skinner and Robert Skinner, challenge the denial of their motions to open the judgment dismissing their medical malpractice action against the defendant Michael Morosky.[2] The plaintiffs also appeal from the summary judgment rendered by the trial court in favor of Morosky in their subsequent action brought pursuant to General Statutes § 52-592, the accidental failure of suit statute. On appeal, the plaintiffs allege that the court improperly concluded that the facts of this case did not merit opening the judgment of dismissal and that the plaintiffs could not use the accidental failure of suit statute to revive their cause of action. In addition, the plaintiffs contend that the court improperly failed to accord special consideration to Matthew Skinner's status as a minor in deciding not to permit the continuation of his

---

[1] Karen Skinner brought this action as the parent and next best friend of her minor son, Matthew.

[2] Hartford Hospital and Peter J. Doelger were originally named as defendants, but they were withdrawn from the action, at the plaintiffs' request, on December 21, 2000, and December 6, 2002, respectively.

personal injury claim. We affirm the judgments of the trial court.

The facts underlying these appeals center around the plaintiffs' struggle, over the course of four years, to secure an attorney who was both willing and able to prosecute their lawsuit in Connecticut. On May 8, 1998, Matthew Skinner was born with a permanent brachial plexus injury to his left shoulder. Two years later, on May 10, 2000, the plaintiffs initiated a medical malpractice action against Morosky (*Skinner I*). As amended, the complaint in *Skinner I* alleged in substance that Morosky's negligent prenatal treatment of Karen Skinner and negligent delivery of her son, Matthew Skinner, caused the child to suffer severe injuries.

The complaint and accompanying documents were filed by attorney Ross Annenberg, a partner in the Massachusetts based law firm of Annenberg & Levine, LLC (Annenberg & Levine).[3] Annenberg became involved in the case because another partner at Annenberg & Levine, attorney Kevin M. Levine, had extensive experience handling birth trauma cases but was not licensed to practice law in Connecticut. Annenberg, conversely, was licensed to practice in Connecticut but unqualified to serve as lead counsel in a complex medical malpractice action. Due to the circumstances, Annenberg agreed to be the plaintiffs' counsel of record until Levine received approval to represent the plaintiffs pro hac vice.

The original complaint had a return date of June 13, 2000. By mid-August 2000, all three of the original defendants had filed appearances, and two of them, Doelger and Hartford Hospital, had served the plaintiffs with interrogatories and requests for production. The

[3] At the time he filed the complaint in *Skinner I*, Annenberg was a partner at the Massachusetts based law firm of Billet, Rigopoulos & Levine. Soon thereafter, he left that firm and became a partner at Annenberg & Levine.

plaintiffs, however, took no action until several months later, causing the defendants to file three motions for nonsuit and the court to order the plaintiffs "to fully respond to the defendants' interrogatories and request[s] for production no later than January 15, [2001]." Soon thereafter, the plaintiffs responded to the discovery requests of Doelger and Hartford Hospital. Yet, it still took an additional year and one half for the plaintiffs to finalize their complaint.

On May 3, 2002, the court dismissed the case for failure to prosecute with due diligence. Just more than one month later, however, the court granted the plaintiffs' motion to open the judgment of dismissal.

Meanwhile, Annenberg attempted unsuccessfully to have two other attorneys from his law firm replace him as lead counsel on the case. The first, Levine, was denied admission pro hac vice on November 6, 2001. The court denied a motion to reargue the denial of his admission pro hac vice on July 11, 2003.

On August 7, 2003, the court granted permission for the second attorney, Vivian M. Sparacio, to proceed pro hac vice. Although she filed an appearance on behalf of the plaintiffs, Sparacio never became actively involved in the case.

In October, 2002, the parties had a pretrial conference with the court at which trial was scheduled for March 23, 2004. When the morning of March 23, 2004, arrived nearly a year and one half later, however, Sparacio failed to appear for trial, and Annenberg informed the court that he was not ready to proceed. Given the circumstances, the court again dismissed the action.

On May 18, 2004, the Connecticut based law firm of Koskoff, Koskoff & Bieder, P.C., simultaneously filed an appearance on behalf of the plaintiffs and a motion

to open the March 23, 2004 judgment of dismissal pursuant to Practice Book § 17-43. The court denied the plaintiffs' motion to open on June 28, 2004, because "Attorney Vivian Sparacio was admitted pro hac vice because of her expertise and relationship with the plaintiff[s]. No explanation was given as to why she did not appear on the date trial was scheduled."

The plaintiffs subsequently filed a motion for reconsideration and reargument and a second motion to open the judgment of dismissal. Both motions were denied in August, 2004. The plaintiffs thereafter filed a timely appeal from the denials of their motions to open the judgment of dismissal and their motion for reconsideration and reargument. No appeal was filed as a result of the dismissal itself.

On March 2, 2005, the plaintiffs commenced a second action against Morosky pursuant to § 52-592, the accidental failure of suit statute (*Skinner II*).[4] Morosky filed a motion for summary judgment, claiming that the plaintiffs' action was barred by the applicable statute of limitations contained in General Statutes § 52-584.[5]

On July 1, 2005, the court granted Morosky's motion after agreeing that § 52-592 could not be used to toll the statute of limitations under these circumstances. In so holding, the court reasoned that *Skinner I*'s dismissal was not due to a " 'matter of form' " as required to trigger § 52-592 but rather "the lack of attention and lack of diligence of [the plaintiffs'] counsel."

---

[4] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[5] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused . . . by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ."

The plaintiffs timely appealed from the court's summary judgment in *Skinner II*. This court ordered that the appeals in both cases be consolidated.

I

The plaintiffs first claim that the court abused its discretion in refusing to open the judgment of dismissal in *Skinner I*.[6]

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 169–70, 612 A.2d 1153 (1992).

The following additional facts are necessary to our resolution of the plaintiffs' claim. On November 6, 2001, the court denied the application for Levine's admission pro hac vice because his affidavit failed to state that there were no disciplinary proceedings currently pending against him, as required by the provisions of Practice Book § 2-16.[7] In fact, unbeknownst to the court, there

---

[6] Because the same standard of review applies to the denial of a motion for reconsideration and reargument; see *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005) ("standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion"), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006); our discussion of the court's denial of the motion to open the judgment encompasses our review of the court's decision on that motion.

[7] Practice Book § 2-16 provides in relevant part: "An attorney who is in good standing at the bar of another state . . . may . . . upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate . . . in the presentation of a cause or appeal in any court of this state; provided, however, that (1) such application shall be accompanied by the affidavit of the applicant (a) certifying whether

was a petition for discipline pending against Levine at the time in Massachusetts.

On July 9, 2003, Annenberg filed an application for Sparacio's admission pro hac vice. The accompanying affidavit, signed by Sparacio, averred that her appearance was "vital" to the case, that she had a "long standing relationship with the plaintiffs," and possessed "specialized skills and knowledge regarding complex medical malpractice litigation."[8] On the basis of these representations, Sparacio was readily granted admission pro hac vice on August 7, 2003. Despite filing an appearance, however, Sparacio never assumed an active role in the case.

On January 5, 2004, Annenberg filed a motion to withdraw his appearance in the case. The court denied the motion on February 18, 2004, because there was no stated reason for the request. On March 12, 2004, with less than two weeks remaining before trial, Annenberg filed an "emergency motion to continue trial," citing failure to complete discovery and unavailability of counsel as his reasons. Specifically, Annenberg represented in his motion that he left Annenberg & Levine in August, 2003, after receiving assurances from Levine that local counsel would be found to replace him on the case. Annenberg further stated that in the three to four months following his departure from Annenberg & Levine, he realized that Levine "was not holding up his end of the bargain." Still, according to Annenberg, he took no action because Levine continued reassuring him that local counsel would be forthcoming.

The "emergency motion to continue trial" also detailed other circumstances that led to the plaintiffs'

such applicant has a grievance pending against him or her in any other jurisdiction . . . ."

[8] Although the court did not notice until later, Sparacio's representations concerning her importance to the case were verbatim restatements of Levine's identical assertions in his affidavit.

lack of counsel, including the fact that it was not until December, 2003, that Annenberg informed the plaintiffs of Levine's "inactiveness" in securing local counsel for them in Connecticut. Finally, the motion stated that the plaintiffs had made "a number" of attempts to contact Levine in the months following their receipt of Annenberg's letter in December, 2003; however, they only received the case file from Levine on March 5, 2004.

The gravity of the plaintiffs' situation became fully apparent on March 23, 2004, the morning that trial in *Skinner I* was scheduled to commence. At the beginning of the hearing, Annenberg explained that he was not prepared for trial because he was "just keeping the case alive at the request of [Levine] and helping the plaintiffs out." He further represented to the court that Levine "was the attorney for the Skinners who they had hired back in 2000," but Levine never took over the case because he was denied admission pro hac vice "on procedural grounds."

The court then inquired as to the whereabouts of Sparacio, who was still the plaintiffs' other counsel of record. Annenberg explained that Sparacio had left Annenberg & Levine in August, 2003, and "it was [his] impression that she had withdrawn from the case subsequently thereafter." Annenberg also informed the court that, contrary to Sparacio's assertions of expertise in her affidavit, she was merely "Mr. Levine's assistant on the medical malpractice cases."

After hearing from opposing counsel, the court denied the plaintiffs' motion for a continuance and announced that the case was dismissed, as the plaintiffs "elect[ed] not to proceed with trial at th[at] point . . . ."[9] In doing so, the court noted that it had previously opened the judgment of dismissal over the "vigorous objection" of one of the defendants who had

---

[9] Specifically, the following colloquy occurred:

"The Court: . . . [S]o, the continued motion for continuance is denied, and the case is scheduled to proceed at this time.

claimed that there was "absolutely no diligence on the part of the plaintiff[s] . . . ." The court then observed that the plaintiffs should already have had an experienced attorney, given the previous admission of Sparacio and her representations that "she had a relationship with the plaintiffs and had the expertise to try the case . . . ." Finally, the court stated that dismissal of the case was warranted because it "looks like it hasn't been pursued with any diligence since [the May 3, 2002 opening of the judgment]."[10]

On August 3, 2004, the court denied the plaintiffs' motion for reconsideration and reargument because "(1) [t]he [p]laintiff[s] never prosecuted this case with due diligence. . . . (2) [t]he court and [Morosky] had the right to rely on the motion for [Sparacio's] admission pro hac vice and the attached affidavit [and] (3) [the] granting of the motion will be prejudicial to [the] defendants and the orderly administration of justice." For identical reasons, on August 31, 2004, the court denied the plaintiffs' second motion to open the judgment of dismissal. In a subsequent articulation of its decision, however, the court also noted its impression that Annenberg had been "less than candid with the court" on March 23, 2004, when he stated that Levine's application was denied for "procedural reasons." The court opined that the denial was, in fact, substantive, given that the disciplinary action pending against Levine in

"[The Plaintiffs' Counsel]: Your Honor, I just want to put on the record, obviously, that the case as it stands right now can't proceed at this time because we were not prepared, and we don't have the necessary tools to proceed at this time.

"The Court: All right, well then, if you elect not to proceed with trial at this point, the case is dismissed."

[10] Although the court provided several reasons for its dismissal of the case, it failed to identify which provision of the rules of practice it was invoking as authority for taking such action. Despite that oversight, it is obvious that the trial court had the power to grant the dismissal, sua motu, under Practice Book § 14-3, to advance caseflow principles. See *Hermann v. Summer Plaza Corp.*, 201 Conn. 263, 274, 513 A.2d 1211 (1986).

Massachusetts rendered him unable to comply with the provisions of Practice Book § 2-16. Furthermore, the court wrote that it believed Levine's affidavit, which "parrot[ed] the Practice Book, was clearly intended to mislead the court."

In order to open the judgment of dismissal pursuant to Practice Book § 17-43 (a), the plaintiffs were required to show, among other things, that they were "prevented by mistake, accident or other reasonable cause" from prosecuting the merits of their case.[11] Here, the court refused to open the judgment for numerous reasons, including the plaintiffs' failure to prosecute the case with due diligence, the mysterious absence of Sparacio on the date of trial, the court's sense that it had been misled by the actions of Annenberg and Levine, and the manner in which the plaintiffs' conduct had caused prejudice to Morosky and interfered with "the orderly administration of justice." Very rarely is that type of situation the result of "mistake, accident or other reasonable cause . . . ." Practice Book § 17-43 (a). Indeed, many of those circumstances, individually, could have constituted sufficient reason for the court to have exercised its discretion and dismissed the case. See, e.g., Practice Book § 14-3 (a) (authorizing trial court to dismiss action "[i]f a party shall fail to prosecute [the] action with reasonable diligence"); Practice Book § 14-18 (cases reached on court docket "shall be tried, defaulted, dismissed pursuant to Section 17-19 or nonsuited, unless for good cause shown"); *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 29 474 A.2d 787

---

[11] Practice Book § 17-43 (a) provides in relevant part: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside . . . and the case reinstated on the docket . . . upon the written motion of any party . . . showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment . . . and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. . . ."

(1984) (upholding court's dismissal because attorney failed "to appear [at trial] to prosecute his cause" [internal quotation marks omitted]).

We believe that all of the circumstances that prevented the plaintiffs from trying *Skinner I* on March 23, 2004, amply justified the court's refusal to open the judgment. In so concluding, we acknowledge that, to a litigant, it may appear unnecessarily harsh for a trial court to impose "the most powerful sanction of dismissal rather than a more moderate sanction directed to the attorney himself." Id., 34. Yet, the importance of efficiency and case flow management in our busy trial courts cannot be denied. "Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with those standards. . . . Judges must be firm and create the expectation that a case will go forward on a specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward." *In re Mongillo*, 190 Conn. 686, 691, 461 A.2d 1387 (1983), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc).

Our review of the record convinces us that the court's refusal to open the judgment of dismissal furthered the goal of judicial economy and was certainly well supported by the facts. Accordingly, we conclude that the court did not abuse its discretion.

II

The plaintiffs next claim that the court improperly rendered summary judgment in *Skinner II* because of the expiration of the applicable statute of limitations. Specifically, the plaintiffs raise two arguments suggesting that the court should have allowed the plaintiffs

to avail themselves of § 52-592. First, the plaintiffs challenge the factual underpinnings of the court's conclusion that *Skinner I*'s dismissal was not due to a matter of form. Second, the plaintiffs contend that the court improperly construed the case law governing the application of § 52-592. Neither argument is persuasive.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . .

On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment . . . as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pepitone* v. *Serman*, 69 Conn. App. 614, 618, 794 A.2d 1136 (2002).

A

The plaintiffs dispute the validity of the court's conclusion that, as a matter of law, *Skinner I*'s dismissal was not due to a "matter of form" within the meaning of § 52-592.

Additional facts are necessary to our resolution of the plaintiffs' claim. In its memorandum of decision granting Morosky's motion for summary judgment, the court stated that the March 23, 2004 dismissal of *Skinner I* was due to "the lack of attention and lack of

diligence of counsel." That statement was made in reliance on the factual findings that compelled the final dismissal of *Skinner I* and the subsequent denials of the plaintiffs' motions to open and motion for reconsideration and reargument. In particular, the court concluded that the plaintiffs were not "prevented by mistake, accident or other reasonable cause" from trying their case since the court denied the plaintiff's second motion to open, in part, because the "stalling tactics used by [the] plaintiffs' counsel . . . hindered the prosecution." Additionally, the court found that, under these circumstances, tolling the statute of limitations pursuant to § 52-592 "would cause undue and unfair prejudice to [Morosky], given the extensive delays that have already occurred and the time, duplication of effort and increased costs that would be imposed upon [him] should this matter proceed."

We believe it helpful to begin our discussion with an examination of the case law interpreting § 52-592 and policy principles that must guide us in applying the statute. "Deemed a 'saving statute,' § 52-592 enables plaintiffs to bring anew causes of action despite the expiration of the applicable statute of limitations." *Pepitone* v. *Serman,* supra, 69 Conn. App. 619. In order to fall within the purview of § 52-592, however, the original lawsuit must have failed for one of the reasons enumerated in the statute. Here, the court rejected, as a matter of law, the plaintiffs' claim that *Skinner I*'s dismissal was "for any matter of form" within the meaning of § 52-592 (a).

The transcript of the March 23, 2004 court proceeding and the court's subsequent statements establish that *Skinner I*'s termination was what our Supreme Court has termed "a disciplinary dismissal." *Ruddock* v. *Burrowes,* 243 Conn. 569, 571, 706 A.2d 967 (1998). Disciplinary dismissals refer to cases dismissed for a variety

of punitive reasons, such as the failure to attend a scheduled pretrial conference; see, e.g., id.; or the failure to close the pleadings in a timely manner. See *Pepitone* v. *Serman*, supra, 69 Conn. App. 616.

In the context of disciplinary dismissals, our Supreme Court has cautioned that "[w]hether [§ 52-592] applies cannot be decided in a factual vacuum." *Ruddock* v. *Burrowes*, supra, 243 Conn. 576. Instead, the propriety of applying § 52-592 depends on whether the plaintiff has made "a factual showing that the prior dismissal was a 'matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." Id., 577. The inquiry under § 52-592, therefore, may be conceptualized as a continuum whereupon a case must be properly placed between one extreme of dismissal for mistake and inadvertence, and the other extreme of dismissal for serious misconduct or cumulative transgressions. *Gillum* v. *Yale University*, 62 Conn. App. 775, 783, 773 A.2d 986, cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001).

Finally, our Supreme Court has set forth several broad policy goals that must be kept in mind when deciding whether a plaintiff should be permitted to avail himself or herself of § 52-592. "Although § 52-592 should be broadly construed because of its remedial nature, it should not be construed so broadly as to hamper a trial court's ability to manage its docket by dismissing cases for appropriate transgressions." (Internal quotation marks omitted.) *Pepitone* v. *Serman*, supra, 69 Conn. App. 619. In addition, a court must be watchful of attempts to avoid the very purpose of statutes of limitation, i.e., ensuring finality in the litigation process. See *Skibeck* v. *Avon*, 24 Conn. App. 239, 243, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991). Nevertheless, looming behind § 52-592 is the overarching "policy of the law to bring about a trial on the merits of a

dispute whenever possible and to secure for the litigant his day in court." *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978).

Giving proper heed to these considerations, we now turn to the facts of this case. Our review of the record convinces us that the behavior of the plaintiffs' attorneys in *Skinner I* clearly surpassed the limits of "mistake, inadvertence or excusable neglect," however broadly conceptualized. The record supports the court's conclusions that the plaintiffs' ability to secure a trial in *Skinner I* was not "prevented by mistake, accident or other reasonable cause," and that the case was dismissed because of a "lack of attention and lack of diligence of counsel." The colloquy that occurred in court on March 23, 2004, reveals a direct order to proceed and a refusal to do so on account of lack of preparedness. The record further shows that no external, unforeseen circumstances inhibited the plaintiffs' ability to be ready for trial on March 23, 2004. Annenberg knew well in advance that he lacked experience trying cases with "extensive medical-legal requirements." The trial date of March 23, 2004, was set in October, 2002, almost a year and one half in advance. One could reasonably assume, therefore, that the plaintiffs and Annenberg would have had more than sufficient time to locate counsel that possessed experience trying birth trauma cases and a license to practice law in Connecticut.

Along similar lines, this court has observed that "[t]he assignment of [a] case is tantamount to an order of the court that the parties proceed to trial at the time set." *Durso* v. *Misiorek*, 9 Conn. App. 93, 97, 516 A.2d 450 (1986). Given this fact, and the practical need for the expedient hearing of scheduled cases, "[i]t suffices to say that a trial judge need not look too kindly upon failure to appear for a scheduled trial." *Merritt* v. *Merritt*, 2 Conn. App. 425, 429, 479 A.2d 255 (1984). Although the plaintiffs argue in their brief that they

provided the court with an explanation for Sparacio's absence, they cannot claim that it was the result of unforeseen circumstances. On the contrary, Sparacio left Annenberg & Levine in August, 2003, shortly after filing an appearance with the court. Even if we were to assume that Annenberg and the plaintiffs were unaware of her lack of intent to pursue the case, several months of inactivity on her part should have put them on notice that something was amiss, thereby warranting further inquiry into her status as lead attorney.

Although it is seldom cited—because it rarely needs to be—Practice Book § 14-20 provides in relevant part that "[p]arties and counsel shall be present and ready to proceed to trial on the day and time specified by the judicial authority. . . ." Here, one of the plaintiffs' attorneys appeared unprepared on the day of trial, and their other counsel of record did not appear at all. Moreover, the plaintiffs have not offered any reasonable explanation for their inability, over four years, to obtain a Connecticut trial lawyer with the requisite expertise to prosecute their action.

We are likewise not persuaded by the plaintiffs' argument that the continuation of the lawsuit through invocation of § 52-592 would not be unduly and unfairly prejudicial to Morosky.[12] As counsel for Morosky pointed out in the hearing on the motion for summary judgment, continuation of the lawsuit would be extremely prejudicial to his client because eight years have passed since the occurrence of the allegedly negligent conduct. By virtue of the delay, Morosky has been subjected to an increased probability that "the search for truth . . . may be impaired by the loss of evidence,

___

[12] The plaintiffs argue in their brief that, in evaluating prejudice, we should balance the harm dismissal would cause to Matthew Skinner, the minor plaintiff, against the harm reinstating the lawsuit would cause Morosky. This claim has no merit. We are aware of no law, nor do the plaintiffs cite any, mandating that we consider prejudice in this fashion.

whether by death or disappearances of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 207, 905 A.2d 1135 (2006). During that time period, Morosky also has incurred all of the expenses inherent in preparing for a complex birth trauma case, including the retention of experts and payment of eight years of attorney's fees. Certainly, the accrual of additional expenses is quite prejudicial, given that it was the plaintiffs' conduct that precluded a trial on the merits. Moreover, reinstatement of the lawsuit would require duplication of some of those expenses.

Furthermore, the policy underlying § 52-584 explicitly acknowledges that prejudice necessarily results from a plaintiff's unnecessary prolonging of a trial in a medical malpractice case. Our Supreme Court has stated that "§ 52-584 reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability . . . ." (Internal quotation marks omitted.) Id., 215. Section 52-584 also "furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . ." (Internal quotation marks omitted.) Id. As such, our legislature has concluded that allowing too much time to pass before trying the merits of a malpractice action is *inherently* prejudicial to a defendant.

The plaintiffs also have not cited any law supporting their claim that their behavior, through their attorneys, falls within the ambit of "mistake, inadvertence or excusable neglect" as those terms have been delineated in previous cases. By way of example, our Supreme Court in *Ruddock* drew a critical distinction between

categories of cases involving, for instance, "[n]onappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties"; *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 n.12; and those involving things such as "a mere failure to respond to a notice of dormancy . . . ." (Citation omitted.) Id.

Recently, in *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 806 A.2d 567 (2002), this court had occasion to conduct an overview of our cases that have been decided since *Ruddock.* We noted that § 52-592 was held to be inapplicable in cases involving conduct that resulted in "years of delay" in reaching trial, the filing of "numerous motions" and "considerable delay or inconvenience to the court or to opposing parties." Id., 610; see *Pepitone* v. *Serman*, supra, 69 Conn. App. 616; *Gillum* v. *Yale University*, supra, 62 Conn. App. 787; *Skibeck* v. *Avon*, supra, 24 Conn. App. 243. The facts before us fall clearly within the purview of this line of cases in which recourse to § 52-592 properly was denied.

We are therefore compelled to agree with the court that the plaintiffs do not, as a matter of law, fall on the "mistake, inadvertence or excusable neglect" side of the diligence continuum established by the case law interpreting § 52-592. Accordingly, the court properly determined that the action in *Skinner II* was time barred and rendered summary judgment in favor of Morosky.

B

The plaintiffs next raise two arguments suggesting that the court improperly applied the law to the circumstances of this case. First, the plaintiffs contend that the court's legal analysis under § 52-592 was improper because it relied on the conclusions set forth in the

denials of the plaintiffs' two motions to open the judgment of dismissal. Specifically, the plaintiffs claim that such reliance was improper because, as noted by our Supreme Court, motions to open a judgment of dismissal are determined "under the discretionary auspices of [General Statutes] § 52-212" rather than "under the remedial auspices of § 52-592 (a) . . . ." *Ruddock* v. *Burrowes*, supra, 243 Conn. 577 n.14.

The plaintiffs are correct in stating that §§ 52-592 and 52-212 have different purposes and, thus, employ different legal standards. There is a difference, however, between relying on the legal conclusions reached in an action and applying the legal standard that was employed in that action. Here, the plaintiffs have failed to explain how the court's reliance on the legal conclusions reached in *Skinner I* in any way affected the legal standard applied in *Skinner II*. Indeed, we wonder how a court could determine why an earlier lawsuit failed without relying on the factual findings and legal conclusions drawn in that other action.

Our reading of the court's statements in its memorandum of decision convinces us that the court properly applied the law to the facts of this case. The court expressly held that the plaintiffs could not avail themselves of § 52-592 because the prior dismissal was not due to a "matter of form," as required by the statute. In so holding, the court stated that the conduct in *Skinner I* constituted "no mere failure to respond to discovery requests, mistake, excusable neglect or delay occasioned by an unfortunate misunderstanding or oversight, but a failure due to a lack of diligence." Under our case law interpreting § 52-592, the court's line of inquiry was entirely correct.

Second, the plaintiffs argue that the court applied the wrong legal standard because it "failed to view the dismissal of *Skinner I* in the context of a continuum

of conduct and the remedial auspices of § 52-592." Again, the plaintiffs have not cited any evidence in the record supporting that proposition. Because the memorandum of decision clearly states the court's finding that the plaintiffs' conduct in *Skinner I* extended beyond the statutorily acceptable realm of "mistake, inadvertence or excusable neglect," there is no evidence suggesting the court applied the wrong standard in this respect either.

### III

The plaintiffs' final claim is that the court improperly failed to accord special consideration to Matthew Skinner's status as a minor when it decided not to allow his parents to continue pursuing his personal injury claim. Their argument is twofold and stems from Connecticut's law and public policy regarding the protection of minors. First, the plaintiffs allege that Connecticut law, and the public policy codified therein, should affirmatively obligate a court to ensure that the attorneys chosen to represent a minor litigant are adequately serving and protecting the minor's rights. Second, the plaintiffs contend that Connecticut law, and the public policy implicit therein, mandates application of a more lenient standard when deciding whether to open the judgment of a case brought on behalf of a minor litigant or allow a minor's previously dismissed case to proceed under § 52-592. We find no basis in Connecticut law to support either contention.

Specifically, the plaintiffs argue in their brief that, in refusing to reinstate *Skinner I* to the docket or allow *Skinner II* to proceed under § 52-592, the court improperly failed to fulfill its affirmative duty "to protect the welfare of the children before them . . . ." In support of that proposition, the plaintiffs have cited an impressive array of decisions from other states. Additionally, the plaintiffs cite many decisions from our state courts

affirming the importance that Connecticut accords to the protection of minors.

The plaintiffs appear to be asking us to impose a blanket duty on trial courts to police the conduct of attorneys representing litigants who are minors. We must decline the plaintiffs' invitation to adopt such a rule summarily because this type of policy driven issue is best resolved by the legislature and not this court.[13] "[I]t is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed." (Internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 341–42, 695 A.2d 1072 (1997). Should the legislature decide that it is unfair for minor litigants to have their cases dismissed because of their attorneys' conduct, it has ample means to remedy that perceived inequity.

The plaintiffs also argue that, in refusing to open the judgment in *Skinner I* or permit recourse to § 52-592 in *Skinner II*, the court improperly failed to employ a more lenient legal standard, which, they argue, applies by virtue of Matthew Skinner's status as a minor. In this regard, the plaintiffs urge us to carve out a "minor litigants" exception to the long-standing rule that a litigant has the right to choose his or her counsel, and,

---

[13] In refusing to adopt such a blanket rule at this time, we note that there are substantial arguments to be made against the plaintiffs' position. Foremost is the fact that imposing such an affirmative obligation on trial courts would directly implicate their duty to remain impartial in court proceedings and maintain the appearance of impartiality.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. . . . A judge should be scrupulous . . . to avoid the appearance of prejudice as regards either the parties or the issues before him." (Citations omitted; internal quotation marks omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 168–69, 444 A.2d 915 (1982).

once chosen, the litigant must bear the consequences of that attorney's misconduct.

The plaintiffs' argument in this regard is closely analogous to the dissent in *Ruddock* v. *Burrowes*, supra, 243 Conn. 569, which bemoaned "[t]he bottom line of the majority opinion . . . that a client may be punished for the transgressions of his or her lawyer." Id., 579 (*Berdon, J.*, dissenting). That case also involved the applicability of § 52-592 to a civil action brought on behalf of a child, although there the claim was negligence rather than medical malpractice. See id., 583 n.4 (*Berdon, J.*, dissenting).

In that case, the dissent argued vigorously, as the plaintiffs do here, that "the law should not deny the client justice because of the misconduct of a lawyer," especially since a trial court has the means to punish attorney misconduct directly. Id., 579–80 (*Berdon, J.*, dissenting). Also like the plaintiffs in this case, the dissent pointed out the seeming injustice of adopting a construction of § 52-592 that would "deprive the plaintiffs, a fourteen year old boy and his mother, their day in court . . . ." Id., 583 n.4 (*Berdon, J.*, dissenting).

Although we are not insensitive to the emotional weight of this argument, we cannot ignore the fact that it did not prevail before our Supreme Court and, thus, does not represent the law in Connecticut. Instead, *Ruddock* set forth the rule, which we must now apply, that § 52-592 cannot be used when the prior action failed because of conduct not constituting "mistake, inadvertence or excusable neglect"—regardless of the age of the party in interest or the state of licensure of the attorney at fault.

Therefore, despite the plaintiffs' various arguments to the contrary, our review of the record demonstrates that the court in *Skinner I* did not abuse its discretion in refusing to open the judgment of dismissal or grant

the motion for reconsideration and reargument. Likewise, the court in *Skinner II* properly rendered summary judgment in favor of Morosky on the basis of its conclusion that *Skinner I*'s dismissal was not due to a "matter of form," as required to toll the statute of limitations under § 52-592.

The judgments are affirmed.

In this opinion the other judges concurred.