ANTHONY D. BOONE, ADMINISTRATOR (ESTATE OF KYLE KALIK BOONE), ET AL. *v.* WILLIAM W. BACKUS HOSPITAL
(AC 27502)

Bishop, Lavine and Mihalakos, Js.

Argued April 16—officially released July 10, 2007

*Joseph A. Moniz*, for the appellants (plaintiffs).

*Jeffrey F. Buebendorf*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff Anthony D. Boone, on his own behalf and as administrator of the estate of his son, Kyle Kalik Boone, appeals from the summary judgment rendered in favor of the defendant, William W. Backus Hospital. The plaintiff claims that the court

improperly determined that (1) all of his claims were barred by res judicata or collateral estoppel and (2) General Statutes § 52-592, the accidental failure of suit statute, was inapplicable to his case.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. "On December 22, 1999, at approximately 5:30 p.m., Heidi Hansen brought her four year old son, the plaintiff's decedent (decedent), to the hospital because he was complaining of pain in his right ear and she observed pus oozing from the ear." *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 553, 864 A.2d 1 (2005) (*Boone I*). Shortly after receiving medication for this problem, the decedent became violently ill, and a hospital nurse informed Hansen that this reaction to the medication was normal and that it was safe to take the decedent home. Id. The decedent's condition did not improve, and Hansen returned to the hospital with him several times that night, in an effort to get additional medical assistance, but each time, Hansen was instructed to leave. Id., 553–54. Several hours later, Hansen returned to the hospital with the decedent, who by this point was lethargic and unresponsive to verbal commands. Id., 554. After several unsuccessful attempts by hospital personnel to revive the decedent, he was pronounced dead. Id.

"On June 25, 2001, the plaintiff commenced the [original] action against the . . . defendant. He subsequently filed an amended complaint that alleged, in the

---

[1] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been dismissed . . . *for any matter of form* . . . or if a judgment of nonsuit has been rendered . . . the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." (Emphasis added.)

first count, that the defendant was negligent in one or more of the following ways: (1) hiring and/or retention of its staff; (2) failing to provide adequate supervision and training of its staff; (3) failing to adequately train, educate or instruct its staff to recognize a severe allergic reaction to medication; (4) failing to warn its staff about the risks and dangers of allergic reactions; (5) failing to provide adequate and proper medical treatment; and (6) failing to respond adequately to the emergency presented on December 22, 1999, when Hansen returned to the hospital twice seeking assistance for the decedent and insisting that she leave despite his worsening condition. In the second count of the complaint, the plaintiff alleged that the defendant was reckless in one or more of the following ways: (1) failing to provide medical treatment; (2) failing to respond adequately to the emergency presented on December 22, 1999, when Hansen returned to the hospital twice seeking assistance for the decedent and insisting that they leave while his condition deteriorated; and (3) failing to consult with a physician before insisting that Hansen and the decedent leave and threatening to call security.

"On August 29, 2002, the trial court entered a scheduling order that required the plaintiff to disclose any expert witnesses on or before October 26, 2002. On December 5, 2002, the plaintiff had not yet disclosed any expert witnesses, and, accordingly, the defendant filed a motion to preclude future disclosures to prevent possible prejudice and delay. On March 3, 2003, the trial court granted the defendant's motion and foreclosed the plaintiff from offering expert testimony in support of his claims. The defendant then filed a motion for summary judgment, arguing that the plaintiff's complaint alleged a medical malpractice claim and that, because the plaintiff would be required to present expert testimony to prevail upon such a claim but now was precluded from doing so, no genuine issue of material fact existed. . . .

"On September 26, 2003, the trial court issued a memorandum of decision granting the defendant's motion for summary judgment. The trial court concluded that the plaintiff's claims sounded in medical malpractice because (1) the defendant was sued in its capacity as a provider of emergency medical services, (2) the alleged negligence was of a specialized medical nature arising out of the medical professional relationship, and (3) the alleged negligence was substantially related to medical diagnoses or treatment and involved the exercise of medical judgment. The trial court recognized that, to prevail in a medical malpractice claim, the plaintiff must prove, ordinarily through expert testimony: '(1) the requisite standard of care, (2) a deviation from the standard of care and (3) a causal connection between the deviation and the claimed injury.' The court held that, while expert testimony might not be necessary to establish the defendant's negligence under these circumstances, such testimony would be necessary to establish causation because the average layperson . . . could not determine, 'without the aid of expert testimony that if the child had been accepted back in the emergency room earlier and treated that the tragedy which resulted would not have occurred.' Accordingly, the trial court rendered summary judgment in favor of the defendant." Id., 554–58. The plaintiff then filed an appeal.

The plaintiff argued on appeal that the court improperly determined that his claims were medical malpractice claims. He also argued that expert testimony was not required to prove the proximate cause of death of the decedent, and, alternatively, if his claims sounded in medical malpractice, expert testimony was not required to prove proximate causation "because the defendant's actions constituted such gross want of care or skill as to give rise to an almost conclusive inference of negligence and fall under the doctrine of res ipsa loquitur." Id., 558. Our Supreme Court concluded that

(1) the plaintiff's claims against the defendant alleged medical malpractice, rather than ordinary negligence, and therefore required expert testimony, (2) the defendant's conduct was not so egregious as to constitute gross negligence, and the plaintiff, therefore, was required to present expert testimony, and (3) because the plaintiff did not disclose an expert witness, the trial court properly rendered summary judgment in favor of the defendant. Id., 562–66, 575.

Following *Boone I,* the plaintiff filed a three count revised complaint against the defendant, on July 22, 2005. Counts one and two concerned the defendant's alleged negligence and recklessness, similar to the claims raised in the complaint filed by the plaintiff in 2001. Count three of the complaint alleged a breach of contract with regard to the defendant's rendering of medical services to the decedent. The defendant again filed a motion for summary judgment, on the basis of the doctrines of res judicata and collateral estoppel, which was granted by the court. The plaintiff then filed the current appeal. Additional facts will be set forth as necessary.

We begin by setting forth the applicable standard of review. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established and is set forth in Practice Book . . . § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) *Daoust* v. *McWilliams,* 49 Conn. App. 715, 719, 716 A.2d 922 (1998). As this appeal involves questions regarding the applicability of

res judicata and collateral estoppel, it presents questions of law, which we review de novo. See id., 719–20.

I

The plaintiff's first claim is that the court's rendering of summary judgment in favor of the defendant does not implicate res judicata or collateral estoppel because a summary judgment ruling is not *always* a judgment on the merits. Specifically, the plaintiff argues that because the court's judgment was a consequence of a "procedural failure," which stemmed from the plaintiff's failure to disclose an expert in a timely fashion, the merits of the plaintiff's cause of action were never reached, and, therefore, the doctrine of res judicata is inapplicable to counts one and two of the plaintiff's complaint. We are not persuaded.

"Although the doctrines of collateral estoppel and res judicata are conceptually related, in practice their application may yield distinct results. Unlike collateral estoppel, under which preclusion occurs only if a claim actually has been litigated, [u]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim . . . [or any claim based on the same operative facts that] might have been made." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, supra, 49 Conn. App. 723–24.

This court has recognized that "a judgment obtained through the grant of summary judgment against a plaintiff constitutes a judgment on the merits for purposes of res judicata." Id., 726–27. In its memorandum of decision, the court relied on this principle when it concluded that the summary judgment rendered by the trial court in *Boone I* had res judicata effect on counts one and two of the plaintiff's complaint. The plaintiff argues, in essence, for an exception to the doctrine of res judicata. There is no case law, however, to support the

plaintiff's proposition that rendering judgment by summary judgment should not be considered a judgment on the merits when it results from the plaintiff's failure to comply with a court's order to disclose an expert. For the foregoing reasons, we affirm the court's judgment that barred the first and second counts of the plaintiff's complaint under the doctrine of res judicata.

As for the third count of the plaintiff's complaint, concerning the defendant's alleged breach of contract in providing medical services to the decedent, the plaintiff concedes that if the doctrine of res judicata applied to counts one and two, the doctrine would apply to count three as well because "[count three] ar[ose] out of the same set of facts and circumstances as the claims in the original action."

"Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, supra, 49 Conn. App. 722. As previously noted, the doctrine of res judicata is a bar to any subsequent action on the same claim or *any claim that might have been made*. Id., 723–24. Accordingly, res judicata bars count three of the complaint. In sum, we affirm the court's judgment with regard to all three counts of the complaint.

## II

The plaintiff's second claim[2] is that § 52-592, the accidental failure of suit statute, is applicable to this case. Specifically, the plaintiff argues in his brief that the

---

[2] Although we have concluded that the doctrine of res judicata bars all three counts of the complaint, and our resolution of the first claim, therefore, is dispositive of the appeal, we feel compelled to address the plaintiff's second claim because it concerns the rendering of judgment by summary judgment by the trial court and because his argument is a novel approach that does not appear to have been addressed directly by this court or our Supreme Court.

failure to disclose an expert within the time provided by the court's scheduling order constituted a mistake within the ambit of § 52-592 (a).[3]

"Although § 52-592 should be broadly construed because of its remedial nature, it should not be construed so broadly as to hamper a trial court's ability to manage its docket by dismissing cases for appropriate transgressions. . . . Nevertheless, looming behind § 52-592 is the overarching policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Citations omitted; internal quotation marks omitted.) *Skinner* v. *Doelger*, 99 Conn. App. 540, 554–55, 915 A.2d 314, cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007).

The plaintiff seeks to categorize the summary judgment ruling in his case as a procedural or disciplinary dismissal, and he relies on *Ruddock* v. *Burrowes*, 243 Conn. 569, 706 A.2d 967 (1998), in support of his argument that the provisions of § 52-592 (a) entitle him to relief. In *Ruddock*, our Supreme Court concluded that whether the statute applied depends on the facts and circumstances surrounding the "disciplinary dismissal" of a plaintiff's case. Id., 570. "Disciplinary dismissals refer to cases dismissed for a variety of punitive reasons, such as the failure to attend a scheduled pretrial conference . . . or the failure to close the pleadings in a timely manner." (Citation omitted.) *Skinner* v. *Doelger*, supra, 99 Conn. App. 553–54. The *Ruddock* court also concluded that "a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." (Internal quotation marks omitted.)

---

[3] The plaintiff's counsel made a similar argument during oral argument before this court.

*Ruddock* v. *Burrowes,* supra, 577. The *Ruddock* court recognized, however, that "§ 52-592 (a) affords no relief in cases in which a plaintiff's prior action was dismissed because the plaintiff . . . consented to its dismissal. Such consent may be inferred from a plaintiff's failure to file a memorandum in opposition to a defendant's motion to strike . . . ." (Citations omitted.) Id., 577–78.

In the present case, although a motion to strike was not filed, the defendant filed a motion to preclude expert witnesses on December 5, 2002. The record indicates that the plaintiff did not file an objection to the defendant's motion to preclude. The plaintiff also did not appear at short calendar to argue against the motion to preclude, and, during the pretrial conference on this matter, counsel for the plaintiff argued that expert testimony was not required to prevail at trial. Until our Supreme Court's decision in *Boone I,* the plaintiff continually asserted that expert testimony was not required in this case. The plaintiff, however, now claims that his earlier inaction with regard to the court's scheduling order and the defendant's subsequent motion to preclude were mistakes as a matter of form because they were " 'due to various enumerated procedural problems.' "

We fail to see how the plaintiff's conduct here amounts to a mistake as a matter of form under § 52-592 (a). Although the plaintiff argues that he did not have sufficient time to name an expert, the plaintiff did not file any motions with the court to that effect, nor did he make such claims at short calendar or at the pretrial conference. The plaintiff had ample time to respond to the court's scheduling order. From August, 2002, when the court entered the scheduling order, until March, 2003, when the court granted the defendant's motion to preclude, the plaintiff had approximately six months to provide the court with a credible explanation for his failure, or inability, to disclose an expert in a

timely manner. Rather than pursuing this course of action, the plaintiff instead did not appear at short calendar and argued at the pretrial conference and then again on appeal in *Boone I* that expert testimony was not required. This trial strategy having failed, the plaintiff now seeks to argue that his earlier inaction entitles him to relief under § 52-592 (a). Due to the fact that the plaintiff's claims already had been decided on the merits, through the court's rendering of summary judgment, and because the plaintiff's conduct does not fall under any of the reasons designated in the accidental failure of suit statute, we conclude that the statute is inapplicable to this case.

The judgment is affirmed.

In this opinion the other judges concurred.