# PHYLLIS LARMEL *v.* METRO NORTH COMMUTER RAILROAD COMPANY
## (SC 20535)

Robinson, C. J., and D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the accidental failure of suit statute (§ 52-592 (a)), "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been otherwise avoided or defeated . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."

Pursuant further to statute ((Rev. to 2017) § 52-549z), unless a demand for a trial de novo is filed with the court within twenty days after an arbirator's decision in a civil arbitration has been mailed to counsel, that decision shall become a judgment of the court.

The plaintiff sought to recover damages for personal injuries that resulted after she slipped and fell while boarding a passenger railcar operated by the defendant. The plaintiff had previously commenced a similar action against the defendant, claiming that her injuries were caused by a wet floor inside of the railcar and that the defendant negligently failed to prevent her fall. Before the commencement of trial in the prior action,

Larmel *v.* Metro North Commuter Railroad Co.

the court ordered the parties to submit to civil arbitration pursuant to statute (§ 52-549u). The arbitrator found in favor of the defendant, and notice of the decision was issued. As a result of issues with the mail and staffing issues at the law firm of the plaintiff's counsel, the plaintiff's counsel did not become aware of the arbitration decision until twenty-two days after the decision was mailed. Because neither party demanded a trial de novo within twenty days of the mailing of the arbitrator's decision pursuant to § 52-549z, the trial court rendered judgment for the defendant. The plaintiff then commenced the present action pursuant to § 52-592 (a), claiming that her failure to demand a trial de novo in the prior action was due to excusable neglect. The trial court granted the defendant's motion to dismiss on the basis of res judicata, and the plaintiff appealed to the Appellate Court, which concluded that the action was not viable under § 52-592 (a) because the first action was tried on its merits by the arbitrator and had resulted in a judgment in favor of the defendant. Accordingly, the Appellate Court reversed the trial court's judgment dismissing the action and remanded the case with direction to render judgment for the defendant. On the granting of certification, the plaintiff appealed to this court. *Held* that the plaintiff's action could not be saved by § 52-592 (a) because her prior action was tried on the merits, and, accordingly, the judgment of the Appellate Court was affirmed: an arbitration pursuant to § 52-549u is a quasi-judicial examination of the parties' claims, the parties submitted evidence to the arbitrator, who was empowered to receive evidence and to find facts, and the arbitrator examined that evidence and rendered a decision on the merits; moreover, allowing a new action to be commenced under § 52-592 (a) in a case such as the present one would undermine the finality mandated by § 52-549z, and a more expansive reading of the phrase "tried on its merits" in § 52-592 (a) that incorporates forms of summary adjudication, other than a formal trial, that turn on the merits of the particular claims presented produced a result more harmonious with existing case law; furthermore, the plaintiff's reliance on the remedial nature of § 52-592 was unavailing, as the nature of the arbitration proceeding itself and the statutory requirement in § 52-549z that an arbitrator's decision shall become a judgment of the court if no demand for a trial de novo is filed within twenty days of the mailing of that decision to counsel indicated that the present case was considered on its merits, and requiring adherence to the judgment that followed worked neither a surprise nor an injustice on the plaintiff.

(*Two justices dissenting in one opinion*)

Argued May 6—officially released November 15, 2021*

* November 15, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Larmel *v.* Metro North Commuter Railroad Co.

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *S. Richards, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Lavine* and *Prescott, Js.*, with *Eveleigh, J.*, dissenting, which reversed the trial court's judgment and remanded the case with direction to render judgment for the defendant, and the plaintiff, on the granting of certification, appealed. *Affirmed.*

*James P. Brennan*, for the appellant (plaintiff).

*Beck S. Fineman*, with whom, on the brief, was *Jenna T. Cutler*, for the appellee (defendant).

*Opinion*

KAHN, J. This certified appeal requires us to consider whether a case that results in a judgment of the trial court in favor of the defendant following a plaintiff's failure to demand a trial de novo after an arbitration proceeding pursuant to General Statutes (Rev. to 2017) § 52-549z[1] has been "tried on its merits," thus barring

---

[1] General Statutes (Rev. to 2017) § 52-549z provides in relevant part: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

"(b) A decision of the arbitrator shall become null and void if an appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

\* \* \*

"(d) *An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days* after the deposit of the arbitrator's decision in the United States mail, as evidenced by the postmark, and it shall include a certification that a copy thereof has been served on each counsel of record, to be accomplished in accordance with the rules of court. The decision of the arbitrator shall not be admissible in any proceeding resulting after a claim for a trial de novo or from a setting aside of an award in accordance with section 52-549aa. . . ." (Emphasis added.)

Larmel *v.* Metro North Commuter Railroad Co.

a subsequent action under the accidental failure of suit statute, General Statutes § 52-592 (a). The Appellate Court's decision in the present case answered this question in the affirmative, and, as a result, that court remanded the case to the trial court with direction to render judgment in favor of the defendant, Metro North Commuter Railroad Company, on a claim of negligence brought by the plaintiff, Phyllis Larmel, that had previously been the subject of mandatory arbitration in a prior civil action. *Larmel* v. *Metro North Commuter Railroad Co.*, 200 Conn. App. 660, 661–62, 240 A.3d 1056 (2020). In the present appeal, the plaintiff claims that her first action was never "tried on its merits" because there was no formal trial in the first action and that, as a result, the Appellate Court's conclusion was in error. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to the present appeal. On October 1, 2014, the plaintiff was injured when she slipped and fell while boarding a passenger railcar at Union Station in New Haven. In 2015, the plaintiff commenced a personal injury action alleging that her injuries were caused by a wet floor inside of the railcar and that the defendant negligently failed to prevent her fall. After the close of pleadings in that case, but before the commencement of trial, the court ordered the parties to arbitration pursuant to General Statutes § 52-549u.[2]

We note that, after the events underlying the present appeal, the legislature amended § 52-549z (d) to allow a demand for a trial de novo following the receipt of an electronic notice. See Public Acts 2019, No. 19-64, § 23. All references to § 52-549z in this opinion are to the 2017 revision of the General Statutes.

[2] General Statutes § 52-549u provides in relevant part: "[T]he judges of the Superior Court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed

Larmel *v.* Metro North Commuter Railroad Co.

The arbitration took place on December 1, 2017, and the arbitrator, Attorney David J. Crotta, Jr., issued his decision on February 26, 2018. In that decision, the arbitrator made various factual findings "[o]n the basis of the credible evidence" submitted by the parties, including the plaintiff's deposition transcript, medical records, medical bills, and a report filed by a medical expert for the defendant. The arbitrator noted that the plaintiff's credibility was circumspect because of various factual inconsistencies in her accounts of the event, and that a defective condition may have never even existed in the first instance because the plaintiff's fall could have been caused by "water on the bottom of [her] own shoes . . . ." Ultimately, the arbitrator found in favor of the defendant, concluding that "the plaintiff has failed to meet her burden of proof by a preponderance of the evidence . . . ."

Notice of the arbitrator's decision was mailed to the parties' counsel on February 27, 2018, as evidenced by a postmark, but did not arrive at the office of the plaintiff's counsel until March 13, 2018. The plaintiff's counsel was on vacation at that time, and did not return to his office until March 19, 2018. As a result of certain staffing issues at the firm, another two days passed before the plaintiff's counsel became aware of the arbitrator's decision. By that point, twenty-two days had passed since the arbitrator's decision was mailed.[3]

Because neither party demanded a trial de novo pursuant to § 52-549z within twenty days of the February 27, 2018 mailing of the arbitrator's decision, the trial court rendered judgment in favor of the defendant in

pleadings have been filed. An award under this section shall not exceed fifty thousand dollars, exclusive of legal interest and costs. . . ."

[3] The facts relating to the events following the arbitrator's decision in the prior action are taken from the allegations contained in the complaint in the present case. The defendant does not appear to contest the accuracy of these allegations.

Larmel *v.* Metro North Commuter Railroad Co.

accordance with the arbitrator's decision on March 21, 2018. The plaintiff then filed a motion to open the judgment on March 23, 2018, which was denied by the court on August 27, 2018, following oral argument. The plaintiff neither appealed from the trial court's denial of her motion to open nor sought an articulation of the court's decision.

The plaintiff then commenced the present action in October, 2018, pursuant to the accidental failure of suit statute, § 52-592 (a).[4] The complaint in this action repeated the allegations of negligence in the first action and further alleged that her failure to demand a trial de novo in the first action was due to excusable neglect. The trial court in the present case granted the defendant's motion to dismiss on the basis of res judicata, and the plaintiff subsequently appealed to the Appellate Court.

The Appellate Court disagreed with the trial court's conclusion that the doctrine of res judicata required dismissal[5] but nonetheless concluded that the action was not viable under § 52-592 (a) because the first action had been "tried on its merits" by the arbitrator and had resulted in a judgment of the court in favor of the defendant. *Larmel* v. *Metro North Commuter Railroad Co.*, supra, 200 Conn. App. 666–67, 673. In

[4] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be *tried on its merits* because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." (Emphasis added.)

[5] We note that the Appellate Court's analysis of res judicata is not at issue in this certified appeal. See footnote 6 of this opinion.

Larmel *v.* Metro North Commuter Railroad Co.

its decision, the Appellate Court concluded that "[t]he judgment in the first action was rendered on the arbitrator's decision as a matter of law and, therefore, the plaintiff may not take advantage of § 52-592 because she has not met the factual predicate that the first action was not tried on its merits." Id., 671. On the basis of this reasoning, the Appellate Court reversed the trial court's judgment dismissing the action and remanded the case with direction to render judgment in favor of the defendant. Id., 661, 679.

Writing in dissent, Justice Eveleigh disagreed with the majority's conclusion that the plaintiff's first action was tried on its merits for purposes of § 52-592 (a). Id., 679. According to Justice Eveleigh, the majority incorrectly concluded that the phrase "tried on its merits" could be satisfied by an adjudication of a claim by an arbitrator, rather than by a more formal judicial proceeding. Id., 683–84 (*Eveleigh, J.*, dissenting). Citing *Nunno* v. *Wixner*, 257 Conn. 671, 680–81, 778 A.2d 145 (2001), Justice Eveleigh argued that arbitration proceedings have "procedural deficiencies" that make them inadequate to be considered "trials," such as a lack of live testimony, cross-examination, and objection to evidence. Id., 682 (*Eveleigh, J.*, dissenting). As a result of those deficiencies, Justice Eveleigh concluded that cases sent to arbitration under § 52-549u are not "tried on [their] merits" for purposes of § 52-592 (a) and, therefore, that the present action should be remanded to the trial court for a determination of whether the plaintiff's failure to demand a trial de novo within twenty days of the arbitration decision caused the first action to fail as a "matter of form." Id., 679–84, 87 (*Eveleigh, J.*, dissenting). This certified appeal followed.[6]

---

[6] This court granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that a judgment rendered after mandatory arbitration pursuant to . . . § 52-549u is a 'trial on the merits' that bars a plaintiff from subsequently utilizing . . . § 52-592?" And (2) "[w]as the plaintiff's failure to request a

341 Conn. 332 FEBRUARY, 2022 339

Larmel *v.* Metro North Commuter Railroad Co.

In the present appeal, the plaintiff renews her contention that her second action may be saved by § 52-592 (a) because her first action was not "tried on its merits . . . ." The plaintiff argues that the Appellate Court's conclusion to the contrary was incorrect and that the case must be remanded to the trial court to decide whether her failure to demand a trial de novo in the first action was the result of mistake, inadvertence, or excusable neglect, and was, thus, a matter of form, allowing the plaintiff to utilize the accidental failure of suit statute to bring the same claim in a second lawsuit. Specifically, the plaintiff argues that the phrase "tried on its merits" means a formal trial and cannot be fulfilled by a judgment of the court following mandatory arbitration under § 52-549u. In response, the defendant argues that the Appellate Court properly interpreted the phrase "tried on its merits" to include a proceeding resolved in such a manner.

Because our resolution of this action involves a question of statutory construction, our review is plenary. See, e.g., *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 782, 105 A.3d 103 (2014). "When presented with a question of statutory construction, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted;

trial de novo pursuant to . . . § 52-549z, following entry of the arbitrator's decision under § 52-549u, a 'matter of form,' as contemplated by § 52-592?" *Larmel* v. *Metro North Commuter Railroad Co.*, 335 Conn. 972, 240 A.3d 676 (2020). Because we answer the first question in the affirmative, we need not address the second.

Larmel *v.* Metro North Commuter Railroad Co.

internal quotation marks omitted.) Id.; see also General Statutes § 1-2z.

We begin our analysis with the language of the accidental failure of suit statute. Section 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be *tried on its merits* because . . . the action has been otherwise avoided or defeated . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ." (Emphasis added.) A plaintiff may obtain relief under this provision only if the original action has "failed one or more times to be tried on its merits . . . ." General Statutes § 52-592 (a). For the reasons that follow, we conclude that a judgment of the trial court rendered following arbitration pursuant to § 52-549u has been "tried on its merits" within the meaning of the accidental failure of suit statute.

To understand the phrase "tried on its merits" as used in § 52-592 (a), we must first review the definition of the term "tried." See, e.g., *State* v. *Webster*, 308 Conn. 43, 53, 60 A.3d 259 (2013). Because the term "tried" is not defined within the statutory scheme, we may "look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) Id. Modern dictionaries indicate that the word "[t]ried" is the past tense of the verb "try," which means, inter alia, "to examine or investigate judicially . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1344. Dictionaries dating back to the first use of the phrase "tried on its merits" in the 1918 revision of the General Statutes have consistently defined the word "try" in a broad manner. See Black's Law Dictionary (2d Ed. 1910) p. 1178 (defining "try" as verb meaning "[t]o examine judicially"); Webster's Revised Unabridged Dictionary of the English Language (1913) p. 2210 (defining "try"

Larmel *v.* Metro North Commuter Railroad Co.

as "[t]o examine or investigate judicially; to examine by witnesses or other judicial evidence and the principles of law"); see also *Nixon* v. *United States*, 506 U.S. 224, 229–30, 113 S. Ct. 732, 122 L. Ed. 2d 1 (1993) (noting that word "try" has been defined broadly).

An arbitration proceeding pursuant to § 52-549u is, undoubtedly, a quasi-judicial examination of the parties' claims, as arbitrators are statutorily authorized to carry out functions that are judicial in nature. Indeed, the trial court may refer any civil action in which the reasonable expectation of the judgment is expected to be less than $50,000, to an arbitrator. General Statutes § 52-549u. "Such arbitrators shall have the power to: (1) Issue subpoenas for the attendance of witnesses and for the production of books, papers and other evidence, such subpoenas to be served in the manner provided by law for service of subpoenas in a civil action and to be returnable to the arbitrators; (2) administer oaths or affirmations; and (3) determine the admissibility of evidence and the form in which it is to be offered." General Statutes § 52-549w (c). The parties in this case submitted various pieces of evidence to the arbitrator for consideration. Although the parties chose not to offer witnesses or to object to evidence, the plaintiff does not dispute that she had the opportunity to do both.

Upon completion of the arbitration hearing, the arbitrator must submit a decision in writing within 120 days. General Statutes § 52-549x; cf. General Statutes § 51-183b. Thereafter, § 52-549z provides either party with an unqualified right to demand a trial de novo before the trial court. "If neither party requests a trial de novo within twenty days, the decision of the arbitrator *becomes the judgment of the court.*" (Emphasis added.) *Nunno* v. *Wixner*, supra, 257 Conn. 679. Because neither party made such a demand in the present case, the arbitrator's decision, in fact, became a judgment of the trial court on the merits in favor of the defendant.

Larmel *v.* Metro North Commuter Railroad Co.

Even in the absence of a demand for a trial de novo, the trial court possesses independent authority to review and, if necessary, set aside the arbitrator's decision. See General Statutes § 52-549aa ("[i]n addition to the absolute right to a trial de novo . . . the court . . . may set aside an award of arbitrators and order a trial de novo in the Superior Court upon proof that the arbitrators acted arbitrarily or capriciously"). This degree of judicial oversight suggests that the trial court's involvement is more than "ministerial," as the plaintiff suggests.

In sum, the foregoing demonstrates that the plaintiff's claim against the defendant was presented to a neutral fact finder who was empowered by statute both to receive evidence and to find facts. That arbitrator examined what had been submitted to him and ultimately rendered a decision against the plaintiff on the merits. Notwithstanding its authority under § 52-549aa, the trial court subsequently adopted that decision as its own after the parties failed to object to it. Because this statutory process turned on the merits of the claims raised in the present case, § 52-592 (a) does not permit the plaintiff to circumvent the judgment of the trial court that was rendered as a result of it.[7]

Reaching a contrary conclusion would undermine the purpose of the twenty day deadline set forth in § 52-549z (d). If we were to accept the plaintiff's argument, a defendant that has obtained a judgment of the court

_____

[7] In reaching this conclusion, we emphasize that the existence of a judgment itself is not determinative of whether the accidental failure of suit statute applies. The question of whether a particular case has been "tried on its merits" within the meaning of § 52-592 (a), rather, turns on the *basis* of the judgment ultimately rendered. When, as in this case, the judgment rendered was based on an assessment of the underlying merits of the claims, the accidental failure of suit statute will not operate to revive those claims. See, e.g., *Hughes* v. *Bemer*, 206 Conn. 491, 492–93, 538 A.2d 703 (1988) (accidental failure of suit statute did not apply to claims that were disposed on merits pursuant to grant of motion to strike).

Larmel *v.* Metro North Commuter Railroad Co.

in its favor following arbitration on the merits under
§ 52-549u would have no way of knowing whether the
plaintiff's failure to demand a trial de novo within that
period of time was the result of excusable neglect and,
thus, no way of knowing whether it could rely on the
court's judgment. Allowing new actions to be com-
menced under the accidental failure of suit statute in
such a case would undermine the finality so clearly
mandated by § 52-549z. See *Coldwell Banker Manning
Realty, Inc.* v. *Cushman & Wakefield of Connecticut,
Inc.*, 293 Conn. 582, 594, 980 A.2d 819 (2009) ("[t]he
principal characteristic of an arbitration award is its
finality as to the matters submitted so that the rights
and obligations of the parties may be definitely fixed"
(internal quotation marks omitted)); cf. *Carbone* v. *Zon-
ing Board of Appeals*, 126 Conn. 602, 607, 13 A.2d 462
(1940) ("Statutes and special laws such as the one
before us fixing a rather brief time in which appeals may
be taken to the courts from the orders and decisions
of administrative boards are evidently designed to
secure in the public interest a speedy determination of
the issues involved; and to make it possible to proceed
in the matter as soon as the time to take an appeal has
passed if one has not been filed. To hold that an appeal
in such a proceeding as the one before us is an 'action'
within the meaning of [the accidental failure of suit
statute], would have the practical effect of eliminating
the time factor in taking such appeals."); *Bank Build-
ing & Equipment Corp. of America* v. *Architectural
Examining Board*, 153 Conn. 121, 124–25, 214 A.2d
377 (1965) (citing *Carbone* and concluding that "[t]he
obvious legislative purpose of securing a prompt deter-
mination of the issues in an appeal from the orders of
the defendant board . . . could be nullified . . . by a
resort to . . . § 52-592"); *Metcalfe* v. *Sandford*, 271
Conn. 531, 537, 858 A.2d 757 (2004) ("The reasoning
adopted by this court in *Carbone* and endorsed in *Bank*

Larmel *v.* Metro North Commuter Railroad Co.

*Building & Equipment Corp.*, applies with equal force to appeals from probate. As with appeals from administrative agencies, the legislature has provided for prompt resolution of issues and finality in decisions by establishing a relatively short time limit within which an appeal from probate may be taken. . . . This time limit provides for the prompt settlement and administration of estates by giving interested parties confidence in the status of the estate within a reasonable time period.'' (Citation omitted; footnote omitted.)).

Furthermore, if the meaning of the phrase ''tried on its merits'' is limited to cases in which there has been a formal ''trial,'' an action resolved on the merits prior to a court or jury trial, for example, by way of summary judgment, could well be open to relitigation through § 52-592 (a). A more expansive reading of the phrase that incorporates other forms of summary adjudication that turn on the merits of the particular claims presented produces a result more harmonious with existing case law. See *Boone* v. *William W. Backus Hospital*, 102 Conn. App. 305, 315, 925 A.2d 432 (accidental failure of suit statute was inapplicable because merits of plaintiff's claims had already been decided ''through the [trial] court's rendering of summary judgment''), cert. denied, 284 Conn. 906, 931 A.2d 261 (2007); see also *Hughes* v. *Bemer*, 206 Conn. 491, 492–93, 538 A.2d 703 (1988) (trial court's judgment in favor of defendant resulting from plaintiff's failure to plead over following grant of motion to strike was considered on merits for purposes of § 52-592); *Carr* v. *Century 21 Real Estate*, Superior Court, judicial district of Fairfield, Docket No. CV-31-84-16 (March 31, 1995) (''[T]he [accidental failure of suit] statute cannot be used when there has been a valid judgment on the merits after [a] full and fair hearing. . . . [The trial court rendered] summary judgment in favor of [the defendant] in the original action. Such a judgment constitutes a judgment on the merits.'' (Cita-

Larmel *v.* Metro North Commuter Railroad Co.

tions omitted.)); cf. *Holt* v. *KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996) (Connecticut's accidental failure of suit statute "only applies if the original claim was dismissed for procedural reasons and not on the merits"), cert. denied, 520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997).

The plaintiff's reliance on the remedial nature of § 52-592 is also unavailing. It is well established that the purpose of § 52-592 (a) is "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his [or her] day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 558, 848 A.2d 352 (2004). As we discussed previously in this opinion, the nature of the arbitration proceeding itself and the statutory requirement that "[a] decision of the arbitrator *shall become a judgment of the court* if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed" all indicate that the present case has, in fact, been considered on its merits. General Statutes § 52-549z (a). The arbitrator made a finding based on the evidence presented by the parties and clearly articulated the reasons for his findings. The trial court then adopted that decision as its own. Requiring adherence to the judgment that followed works neither a surprise nor an injustice on the plaintiff. As such, the policy considerations behind § 52-592 (a) do not bolster the plaintiff's position.[8]

[8] We note that reaching the opposite conclusion would mean that a plaintiff who inadvertently misses the deadline for requesting a trial de novo could have recourse under the accidental failure of suit statute, whereas a similarly

Larmel *v.* Metro North Commuter Railroad Co.

Finally, because we find its facts distinguishable from the present case, we respectfully disagree with Justice Eveleigh's conclusion that the issue presented in this appeal is controlled by *Nunno* v. *Wixner*, supra, 257 Conn. 671. In *Nunno*, this court considered whether the offer of compromise statute, General Statutes § 52-192a, applies to a judgment rendered after a mandatory arbitration proceeding pursuant to § 52-549u. Id., 673–74. Section 52-192a indicates that offer of compromise interest is only available "[a]fter trial," and, accordingly, this court was called on to consider whether a mandatory arbitration pursuant to § 52-549u constituted a "trial" for that limited purpose. *Nunno* v. *Wixner*, supra, 676–77. Although we concluded that arbitration pursuant to § 52-549u is not a "trial" for purposes of the offer of compromise statute; id., 677; for the reasons that follow, we do not believe that our holding in that case requires us to apply the same narrow reading of the term "trial" in § 52-192a to the phrase "tried on its merits" in § 52-592 (a).

First, the statute at issue in *Nunno*, the offer of compromise statute, is textually distinguishable from the accidental failure of suit statute. The phrase "[a]fter trial" in § 52-192a is different from the phrase "tried on its merits" in § 52-592 (a). Although the word "trial" is most often understood as a formal trial before a judicial body, the word "tried" has frequently been used in reference to alternative dispute resolutions outside of a formal trial, including arbitration proceedings. See, e.g., *Demsey & Associates, Inc.* v. *S. S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972) ("[third-party defendant claimed it] was entitled to have certain issues *tried by arbitration*" (emphasis added)); *Bean* v. *Farnam*, 23

situated defendant would not. This would mean that the deadline created by § 52-549z, which nominally applies to both parties, would be fatal only to defendants. It is difficult to believe that such an inequitable result would have been intended by our legislature.

Larmel *v.* Metro North Commuter Railroad Co.

Mass. (6 Pick.) 268, 275 (1828) ("[t]he plea . . . in the present case does not require us to try over again a matter already *tried by the arbitrators*" (emphasis added)); cf. *Paulus* v. *LaSala*, 56 Conn. App. 139, 140, 742 A.2d 379 (1999) ("[a]n attorney trial referee *tried* the case" (emphasis added)), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000); *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 127, 665 A.2d 86 ("[t]his case was *tried* before an attorney trial referee" (emphasis added)), cert. denied, 253 Conn. 928, 667 A.2d 554 (1995).

In addition, the phrase "[a]fter trial" in § 52-192a and the phrase "tried on its merits" in § 52-592 (a) can also be distinguished by the other language used in those statutes. Section 52-192a contains several references to "a verdict by the jury or an award by the court" that will be considered "[a]fter trial . . . ." These references make it plain that the legislature intended for the term "trial" in § 52-192a to refer to a formal trial held before a judge. The relevant portions of § 52-592 (a), on the other hand, neither mention jury verdicts or court awards nor contain any other language that would indicate the legislature's intention to restrict the phrase "tried on its merits" to proceedings conducted exclusively before a judge. Rather, the statute contemplates a remedy for actions that have failed to be heard *on their merits*. There can be no dispute that the arbitrator's decision, which was later adopted by the trial court itself, resolved the present case on its merits. Indeed, the plaintiff does not contend otherwise.

Unlike in *Nunno*,[9] a reading of the phrase "tried on [the] merits" as requiring less than a formal trial is not

_____

[9] One of the arguments that informed our construction of the phrase "[a]fter trial" in *Nunno* was that the imposition of interest on a defendant would discourage the voluntary acceptance of arbitration awards. (Internal quotation marks omitted.) *Nunno* v. *Wixner*, supra, 257 Conn. 677, 684–85. That same tension is not at issue in the present case.

Larmel *v.* Metro North Commuter Railroad Co.

inconsistent with the underlying purpose of § 52-592
(a). The purpose of § 52-592 (a) is "to avoid hardships
arising from an unbending enforcement of limitation
statutes"; *Issac* v. *Mount Sinai Hospital*, 210 Conn.
721, 728, 557 A.2d 116 (1989); and "to bring about a
trial on the merits of a dispute whenever possible and
to secure for the litigant his day in court." (Internal
quotation marks omitted.) *Rocco* v. *Garrison*, supra,
268 Conn. 558. In other words, rather than trying to
conserve judicial resources, the accidental failure of
suit statute ensures that, under certain circumstances,
litigants retain their right to have their disputes resolved
on the merits. The right to have disputes resolved on
the merits is not exclusive to a formal court or jury
trial. For the reasons discussed previously, it is clear
that the parties in the present case have had an opportu-
nity to have their dispute resolved on the merits.

For the foregoing reasons, we conclude that the plain-
tiff's first case was "tried on its merits" within the mean-
ing of § 52-592 (a) and that, as a result, the Appellate
Court properly remanded the present case to the trial
court with direction to render judgment in favor of the
defendant.

The judgment of the Appellate Court is affirmed.

In this opinion D'AURIA, MULLINS and KELLER,
Js. concurred.


ECKER, J., with whom ROBINSON, C. J., joins, dis-
senting. The majority holds that an action that has been
submitted to court-ordered arbitration under General
Statutes § 52-549u has been "tried on its merits" within
the meaning of General Statutes § 52-592 (a), a savings
statute that we have repeatedly stated, since its enact-
ment 160 years ago, must be construed liberally to effec-

Larmel *v.* Metro North Commuter Railroad Co.

tuate its remedial purpose.[1] It is clear to me that the informal arbitration proceeding at issue lacks the formality or procedural protections of a trial, and, therefore, the present case has not been "tried on its merits" under § 52-592 (a). Accordingly, I would reverse the judgment of the Appellate Court and remand the case to the trial court to determine whether the plaintiff, Phyllis Larmel, has satisfied the other condition necessary to qualify for relief under the savings statute.[2]

The majority holds that the plain language of the phrase "tried on its merits" in § 52-592 (a) includes a case resolved by arbitration pursuant to § 52-549u. I have difficulty understanding the basis for this conclusion. It is not supported by any of the dictionary definitions cited in the majority opinion, all of which require that the inquiry or examination proceed "judicially." E.g., Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1344. On its face, that qualification would appear to *exclude* an arbitration, certainly a nonbinding, informal arbitration conducted by an attorney under

[1] "The first case construing [the accidental failure of suit] statute was *Johnston* v. *Sikes*, 56 Conn. 589 [Super. 1888]. It definitely established that the statute was remedial and should be liberally interpreted." *Baker* v. *Baningoso*, 134 Conn. 382, 386–87, 58 A.2d 5 (1948); see *Johnston* v. *Sikes*, supra, 596 ("a very liberal construction is to be given to the" savings statute). We have liberally interpreted the statute for more than one century. See, e.g., *Dorry* v. *Garden*, 313 Conn. 516, 530, 98 A.3d 55 (2014) (observing that "[§ 52-592] is remedial in nature" and, therefore, "must be afforded a liberal construction in favor of those whom the legislature intended to benefit" (internal quotation marks omitted)); *Ruddock* v. *Burrowes*, 243 Conn. 569, 575, 706 A.2d 967 (1998) (citing "a long line of cases [holding] that § 52-592 (a) is remedial in nature and, therefore, warrants a broad construction"); *Lacasse* v. *Burns*, 214 Conn. 464, 470, 572 A.2d 357 (1990) ("we have consistently held that § 52-592 is remedial in nature and thus, should be broadly and liberally construed").

[2] In addition to establishing that the first action was not "tried on its merits," the plaintiff in the present case would be entitled to the benefit of the savings statute only if she demonstrates that the first action was "avoided or defeated . . . for any matter of form . . . ." General Statutes § 52-592 (a). I discuss this additional requirement later in this dissenting opinion.

Larmel *v.* Metro North Commuter Railroad Co.

§ 52-549u.[3] This conclusion finds strong support in the fact that the savings statute applies only to an "action" that has failed to be tried on its merits.[4] See General Statutes § 52-592 (a) ("If any *action*, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . ." (Emphasis added.)).

---

[3] Contrary to the majority's assertion, an arbitration held pursuant to § 52-549u is not a "quasi-judicial" proceeding; nor is an arbitrator appointed pursuant to General Statutes § 52-549w "statutorily authorized to carry out functions that are judicial in nature." All attorneys admitted to practice in Connecticut, while in good standing, are commissioners of the Superior Court with the power to "sign writs and subpoenas, take recognizances, administer oaths and take depositions and acknowledgments of deeds," as well as to "issue subpoenas to compel the attendance of witnesses . . . ." General Statutes § 51-85. Although an arbitrator has the power to "determine the admissibility of evidence and the form in which it is to be offered"; General Statutes § 52-549w (c) (3); he or she is not constrained by the rules of evidence in doing so; see Practice Book § 23-63; and, most important, any judgment rendered is of no force or effect if either party rejects it simply by filing a one sentence demand for a trial de novo. The arbitrator thus exercises no true judicial function.

[4] I agree entirely with the majority's statement that the word "try" may be defined "in a broad manner" depending on the context of its usage. See, e.g., *Nixon* v. *United States*, 506 U.S. 224, 228–29, 113 S. Ct. 732, 122 L. Ed. 2d 1 (1993) (construing meaning of "try" in article first, § 3, clause 6, of United States constitution, which provides that " '[t]he Senate shall have the sole Power to *try* all Impeachments' " (emphasis added)). But the context here is provided by § 52-592, the statute under construction, and the legislature did not use the phrase "tried on its merits" in a broad or informal manner therein; instead, the plain language of the statute refers to the formalities attendant to a trial before a judge. Section 52-592 provides in relevant part that a plaintiff "may commence a new *action*" only if the original "*action*" was "commenced within the time limited by law" and "failed . . . to be tried on its merits" due to "any matter of form," such as "insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . ." (Emphasis added.) General Statutes § 52-592 (a). In light of the "basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole"; (internal quotation marks omitted) *Wiseman* v. *Armstrong*, 269 Conn. 802, 820, 850 A.2d 114 (2004); we must consider the meaning of the phrase "tried on its merits" in conjunction with the statutory references to actions, statutes of limitations, service of process, and jurisdiction. Construing the statute as a whole, as this court is required to do, it is an inescapable conclusion that the legislature intended the phrase "tried on its merits" to refer to a trial in court, which is where actions are tried in Connecticut.

Larmel *v.* Metro North Commuter Railroad Co.

An "action" in this context means a civil lawsuit, not
an arbitration.[5] As far as I am aware, moreover, an
action is "tried on its merits" at a *trial*, that is, a formal,
binding adjudication presided over by a judge or other
official authorized to carry out the judicial function.
This is what "tried on its merits" meant around the
time that the accidental failure of suit statute was first
enacted,[6] and I have no reason to believe that the mean-
ing of the phrase is appreciably different today. I have
not seen any lexical or legal authority that would sup-
port the majority's contrary view, as a matter of plain
language or otherwise.

I agree with the majority that "[t]he question of
whether a particular case has been 'tried on its merits'
within the meaning of [the accidental failure of suit
statute] . . . turns on the *basis* of the judgment ulti-
mately rendered"; (emphasis in original) footnote 7 of
the majority opinion; but I disagree that the *judgment
rendered by the trial court* in this case "turned on the
merits of the claims raised" by the plaintiff. The trial
court, in fact, never assessed the merits of the plaintiff's
claims, and judgment was rendered with absolutely no
consideration of the merits. Exactly the opposite
occurred—the trial court automatically rendered judg-
ment after the plaintiff failed to file a timely demand
for a trial de novo in accordance with General Statutes

[5] See, e.g., *Capers* v. *Lee*, 239 Conn. 265, 266–67, 684 A.2d 696 (1996)
(notice of claim filed with office of claims commissioner pursuant to General
Statutes § 4-147 is not "an 'action' " under § 52-592 (a)); *Bank Building &
Equipment Corp.* v. *Architectural Examining Board*, 153 Conn. 121, 124–25,
214 A.2d 377 (1965) (appeal from order of architectural examining board
was not "an 'action' " under § 52-592 (a) or "a 'civil action' " under General
Statutes § 52-593); *Arute Bros., Inc.* v. *Dept. of Transportation*, 87 Conn.
App. 367, 369, 865 A.2d 464 ("[an] arbitration proceeding [under General
Statutes § 4-61] is not an action under § 52-592 [a]"), cert. denied, 273 Conn.
918, 871 A.2d 370 (2005).

[6] See, e.g., *Rutkoski* v. *Zalaski*, 90 Conn. 108, 115, 96 A. 365 (1916) (referring
to action filed and adjudicated in Superior Court as "tried on its merits");
*Downie* v. *Nettleton*, 61 Conn. 593, 594, 24 A. 977 (1892) (same).

Larmel *v.* Metro North Commuter Railroad Co.

(Rev. to 2017) § 52-549z. Because the basis of the trial court's judgment was a "procedural [reason] and not on the merits," there is no doubt that Connecticut's accidental failure of suit statute applies. *Holt* v. *KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996), cert. denied, 520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997).

Indeed, in *Nunno* v. *Wixner*, 257 Conn. 671, 778 A.2d 145 (2001), we expressly held that "[c]ourt-mandated arbitration proceedings pursuant to § 52-549u do not include many of the distinctive hallmarks of a trial"; id., 679; and, therefore, "do not constitute a trial . . . ." Id., 681. *Nunno* enumerates the myriad ways in which an arbitration proceeding is not equivalent to a trial in a civil action, both as a general matter and under the particular procedures applicable to an arbitration under § 52-549u. See id., 678–80.[7] The court in *Nunno* also observed that the actual arbitration procedures followed by the parties in that case, which were essentially the same procedures utilized in the present case, supported the conclusion that the arbitration proceeding was not a trial: "[N]o witnesses testified for either party and no formal exhibits were offered. The parties merely submitted copies of a police report, photographs, transcripts of depositions, medical reports and medical bills. The parties also summarized their respective cases through their counsel. After reviewing all of the information provided, the arbitrator issued his nonbinding award. The arbitration proceedings . . . differed greatly from a trial. The procedures were informal and parties were allowed to present unsworn evidence. None of the rules of evidence applied in this proceeding. In addition, the proceeding was presided over by a nonjudicial officer, whose decision was not binding on

---

[7] For example, the decision maker is a lawyer, there is no record of the proceedings, and the parties are not bound by the rules of evidence. See Practice Book § 23-63.

Larmel *v.* Metro North Commuter Railroad Co.

the parties. The court-mandated arbitration proceeding
. . . case did not constitute a trial.'' Id., 680–81.

Finally, and importantly, the court in *Nunno* relied
on the legislative history of § 52-549u to demonstrate
that the legislature did not intend a court-mandated
arbitration proceeding to be a trial (or, in the statutory
language applicable here, a proceeding in which an
''action'' has been ''tried on its merits''). As the court in
*Nunno* observed, the ''legislative history demonstrates
that the legislature intended these arbitration proceed-
ings to be a form of alternative dispute resolution
designed to assist parties to settle cases voluntarily.
In 1997, during the course of the legislative debates
concerning the enactment of the bill that later amended
§ 52-549u, the members of the House of Representatives
discussed the purpose of the court-mandated arbitra-
tion proceedings. In the course of the debate, Represen-
tative Michael P. Lawlor, a proponent of the bill, was
asked why the rules of evidence would not apply in
these arbitration proceedings. 40 H.R. Proc., Pt. 4, 1997
Sess., p. 1391. Representative Lawlor replied that '[t]his
whole process of arbitration is an [alternative] dispute
resolution mechanism [that is] intended to avoid unnec-
essary court delays. *In effect these are the two parties
sitting down with an impartial hearing officer to fig-
ure out if there is a resolution to the case* [*that*] *would
avoid a lengthy and expensive trial. . . .* [*T*]*his is
what you might consider an elaborate* [*pretrial*] *dis-
cussion.*' . . . Id., pp. 1391–92. Representative Lawlor
went on to indicate that the purpose of the legislation
was 'essentially trying to encourage as many people as
possible to go this route for a relatively small case
where there are relatively simple issues at hand.' Id.,
p. 1393. Representative Lawlor's comments clearly indi-
cate that the legislature did not understand these arbi-
tration proceedings to be a trial, or its equivalent. To the
contrary, we conclude[d] [in *Nunno*] that the legislature

Larmel *v.* Metro North Commuter Railroad Co.

intended these arbitration proceedings to be a desirable, informal means of resolving disputes *before* trial.'' (Emphasis in original.) *Nunno* v. *Wixner*, supra, 257 Conn. 682–83. I therefore agree with Justice Eveleigh's dissenting opinion that our holding in *Nunno* effectively dictates the outcome of the present appeal because, under the ineluctable logic and reasoning of that case, ''whe[n] an arbitration lacks the formalities and hallmarks of a judicial proceeding, as it does here, pursuant to the statutory scheme of § 52-549 et seq., it cannot constitute a trial.'' *Larmel* v. *Metro North Commuter Railroad Co.*, 200 Conn. App. 660, 682, 240 A.3d 1056 (2020) (*Eveleigh, J.*, dissenting).

The majority seeks to distinguish *Nunno* on the ground that there is a distinction between the meaning of the word ''trial'' in our offer of compromise statute, General Statutes § 52-192a, and the phrase ''tried on its merits'' in our accidental failure of suit statute, § 52-592 (a). I fail to see any meaningful difference between an action being ''tried'' and the ''trial'' of an action. Although the word ''tried'' is a verb and the word ''trial'' is a noun, they refer to the same thing: an action is ''tried on its merits'' in a ''trial.'' It is, of course, true that the present case involves § 52-592 rather than § 52-192a, but the fundamental inquiry in both *Nunno* and the present case is the same, namely, whether the legislature intended a court-mandated arbitration proceeding under § 52-549u to constitute a ''trial'' of the action such that it has been ''tried on its merits.'' The consonance is both logical and meaningful. I cannot imagine an action that results in a recovery for a plaintiff ''[a]fter trial''; General Statutes § 52-192a (c); that has not also been tried on its merits. Nor can I envision an action that has been tried on its merits without first having been decided in a trial.[8]

_____

[8] The majority states that ''the word 'tried' has frequently been used in reference to alternative dispute resolutions outside of a formal trial, including arbitration proceedings.'' Whatever nomenclature may be used in connec-

341 Conn. 332     FEBRUARY, 2022     355

Larmel *v.* Metro North Commuter Railroad Co.

Contrary to the majority's assertion, the "finality" of the trial court's judgment is not an unacceptable or unwarranted casualty under the circumstances of this case.[9] Indeed, the very purpose and effect of § 52-592 is to remove the finality of any judgment within its scope. Judgment has *always* been rendered against a plaintiff in *every* case in which a second action is reinitiated under § 52-592. The policy embedded in the statute dictates that finality is a concern only if the underlying judgment was rendered after being "tried on its merits." See *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 127, 735 A.2d 782 (1999) ("[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his *day in court*" (emphasis added; internal quotation marks omitted)); *Contadini* v. *DeVito*, 71 Conn. App. 697, 702, 803 A.2d 423 ("[t]he saving[s] statute has a broad and liberal purpose and ensures the plaintiff *the right to a trial of his claim*" (emphasis added)), cert. denied, 262 Conn. 918, 812 A.2d 862 (2002). Rendering judgment does not transform an action that was not tried on the merits into an action

_____

tion with a formal arbitration, I would be very surprised if any lawyer or judge would describe a case as having been "tried" at an informal, court-mandated arbitration proceeding under § 52-549u.

[9] The majority's reliance on *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 13 A.2d 462 (1940), and its progeny is misplaced because those cases hold that an appeal from an administrative decision is not an "action," as defined by § 52-592 (a), and say nothing about whether the matter has been "tried on its merits." Moreover, the policy interests underlying those cases are inapplicable because the purpose of a court-ordered arbitration under § 52-549u is not to obtain a final determination of disputed issues but to reach a settlement that both parties find acceptable. Unlike the decision of an administrative agency, which must be affirmed on appeal unless "the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion"; (internal quotation marks omitted) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 669, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001); the decision of the arbitrator "shall become null and void" and "shall not be admissible in any proceeding" after a demand for a trial de novo is filed. General Statutes § 52-549z (b) and (d).

Larmel *v.* Metro North Commuter Railroad Co.

that was tried on the merits. Judgment was not rendered in the present case because the action was tried on the merits; judgment was rendered because the plaintiff's lawyer neglected to timely file a piece of paper demanding a trial on the merits.

Similarly, effectuating the remedial purpose of § 52-592 by permitting a plaintiff to reinitiate an action after judgment does not "undermine the purpose of the twenty day deadline set forth in § 52-549z (d)," as the majority states, any more than it undermines the purposes served by statutes of limitations, sovereign immunity, disciplinary dismissals, or a variety of other filing requirements.[10] See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011) (accidental failure of suit statute was applicable to dismissal of medical malpractice action under General Statutes § 52-190a (c) for failure to supply opinion letter authored by similar health care provider, provided failure was "[a] matter of form"); *Ruddock* v. *Burrowes*, 243 Conn. 569, 576, 706 A.2d 967 (1998) ("disciplinary

_____

[10] The majority expresses the related concern that effectuating the remedial purpose of § 52-592 in the present case would create "an inequitable result" because a defendant who misses the twenty day deadline cannot obtain relief under the statute. Footnote 8 of the majority opinion. But this result is inherent in a statute that provides a remedy to the plaintiff whose action is defeated without a trial because of a "matter of form" within the meaning of the statute. There are many deadlines that apply to both parties, the violation of which may be fatal to either party's case. For example, failure to comply with the deadlines governing discovery may result in the entry of a nonsuit or default judgment. See Practice Book § 13-14 (b) (1). Under such circumstances, a defendant's only recourse is to file postjudgment motions (for reconsideration or to open the judgment) or an appeal challenging the judgment, whereas a plaintiff may file a second action under § 52-592 (a) provided that the requirements of the accidental failure of suit statute have been met. See, e.g., *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 ("disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)"). To the extent that such a result is inequitable, the inequity is consistent with the express language of § 52-592 (a) and the intent of the legislature, and the rectification of any such inequity should come from the legislature, not this court.

Larmel *v.* Metro North Commuter Railroad Co.

dismissals are not excluded categorically from the relief afforded by § 52-592 (a)''); *Capers* v. *Lee*, 239 Conn. 265, 271, 684 A.2d 696 (1996) (accidental failure of suit statute, which ''applies only when there has been an original action that had been commenced in a timely fashion,'' was enacted ''to avoid hardships arising from an unbending enforcement of limitation statutes'' (internal quotation marks omitted)); *Lacasse* v. *Burns*, 214 Conn. 464, 470–71, 572 A.2d 357 (1990) (concluding, ''on the basis of the language and evident purpose of § 52-592,'' that statute applies ''to the state in the same manner as it would . . . to any other litigant''). As we previously have observed, the language of § 52-592 ''is general and comprehensive. It neither embodies exceptions or reservations, nor suggests any.'' *Korb* v. *Bridgeport Gas Light Co.*, 91 Conn. 395, 401, 99 A. 1048 (1917).

By all appearances, the legislature's use of the phrase ''tried on its merits'' in § 52-592 (a) was deliberate and fully informed. Indeed, the relevant language has remained unchanged for more than one century. Far from enacting restrictions, the legislature has expanded the scope of the statute over time.[11] It presumably has done so in recognition of the fact that justice is best served when courts decide cases on their merits. Justice Shea made this point in his concurring opinion in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 540 A.2d 59 (1988), in which he

---

[11] See *Baker* v. *Baningoso*, 134 Conn. 382, 386, 58 A.2d 5 (1948) (''[the statute] has been amended repeatedly to cover additional situations but its basic provisions have not been changed''); see also *Broderick* v. *Jackman*, 167 Conn. 96, 98–99, 355 A.2d 234 (1974) (reviewing history of statutory amendments and expansion of ''ground[s] [that] could be used as the basis for commencing a new action'' under § 52-592 and predecessor statutes). Chief Justice Peters, writing for the court in 1998, interpreted the pattern of legislative expansion to indicate agreement with this court's rule of liberal construction: ''Apparently acceding in our assessment of its [remedial] intent, the legislature, over the years, repeatedly has broadened eligibility for the relief afforded by the statute.'' *Ruddock* v. *Burrowes*, supra, 243 Conn. 575.

Larmel *v.* Metro North Commuter Railroad Co.

observed that the "accidental failure of suit statute, permitting a new action to be commenced after the original action has been defeated 'for any matter of form' ''; id., 76 (*Shea, J.*, concurring); was designed to ameliorate the harshness of the common law in order for parties to have their cases resolved, not on the basis of the neglect of the lawyer but, rather, on the merits. See id. 75–76 (*Shea, J.*, concurring) ("[b]eginning in the middle of the nineteenth century . . . our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw").

Of course, the remedial purpose of § 52-592 "is not without limits. . . . Even the saving[s] statute does not guarantee that all plaintiffs have the opportunity to have their cases decided on the merits. It merely allows them a limited opportunity to correct certain defects in their actions within a certain period of time." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 355, 63 A.3d 940 (2013). In order to " 'save' [a] deficient [action]" under our accidental failure of suit statute; *Peabody N.E., Inc.* v. *Dept. of Transportation*, supra, 250 Conn. 128; a plaintiff must establish not only that the first action was not "tried on its merits" but also that it was "otherwise avoided or defeated . . . for any matter of form . . . ."[12] General Statutes

_____

[12] For example, an action resolved on the merits by way of summary judgment cannot be reinitiated under § 52-592 (a) because the rendering of summary judgment is not as a "matter of form . . . ." See *Boone* v. *William W. Backus Hospital*, 102 Conn. App. 305, 314, 925 A.2d 432 (plaintiff could not reinitiate second action after rendering of summary judgment because plaintiff's failure to disclose expert witness did not "[amount] to a mistake as a matter of form under § 52-592 (a)"), cert. denied, 284 Conn. 906, 931 A.2d 261 (2007); see also *Hughes* v. *Bemer*, 206 Conn. 491, 495, 538 A.2d

Larmel *v.* Metro North Commuter Railroad Co.

§ 52-592 (a). We have declined to construe the phrase "matter of form" as creating a sharp distinction between matters of procedure and those "of substance . . . embracing the real merits of the controversy between the parties." (Internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 50; see *Lacasse* v. *Burns*, supra, 214 Conn. 472–74. Instead, we have held that whether an action has failed due to a "matter of form" is a "fact-sensitive . . . inquiry," and a plaintiff must be afforded an opportunity to make a factual showing that the failure of the case to be tried on its merits was due to a "good faith mistake, inadvertence or excusable neglect," as opposed to the "egregious conduct by an attorney or party . . . ." *Plante* v. *Charlotte Hungerford Hospital*, supra, 50–51; see *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 ("[w]hether the [accidental failure of suit] statute applies cannot be decided in a factual vacuum"); see also *Skinner* v. *Doelger*, 99 Conn. App. 540, 554, 915 A.2d 314 (whether prior action failed as "matter of form" "may be conceptualized as a continuum whereupon a case must be properly placed between one extreme of dismissal for mistake and inadvertence, and the other extreme of dismissal for serious misconduct or cumulative transgressions"), cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007).

In the absence of factual findings by the trial court, we cannot determine on appeal whether the plaintiff's failure to file a demand for a trial de novo within twenty days was due to mistake, inadvertence or excusable neglect on the one hand, or egregious conduct on the

703 (1988) (dismissal of action for failure to file memorandum of law in opposition to motion to strike "is not a matter of form" under § 52-592). I therefore disagree with the majority that, "if the meaning of the phrase 'tried on its merits' is limited to cases in which there has been a formal 'trial,' an action resolved on the merits prior to a court or jury trial, for example, by way of summary judgment, could well be open to relitigation through § 52-592 (a)."

other. Accordingly, I would remand the case to the trial court for a factual determination as to whether the first action was defeated for a "matter of form" under § 52-592 (a).

I therefore respectfully dissent.

———————————————